# United States Court of Federal Claims

No. 11-743 C
(11-741 Consolidated)
Filed January 7, 2014

---

**RICHARD R. GROOMS,**

       *Plaintiff,*

**v.**

**UNITED STATES OF AMERICA,**

       *Defendant.*

---

**DAVID A. LAMEY,** *et al.,*

       *Plaintiffs,*

**v.**

**UNITED STATES OF AMERICA,**

       *Defendant.*

---

RCFC 52.1; RCFC 12(b)(6);
arbitrary and capricious;
substantial evidence; Military
Disability pay; 10 U.S.C. §
1201; 10 U.S.C. § 1203;
"benefit of the doubt" rule

*Jason E. Perry*, for plaintiffs.

*Gregg Paris Yates*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, for defendant.

## OPINION *and* ORDER

**Block,** *Judge.*

Before the court are consolidated "military pay" cases. Plaintiffs Richard Grooms, David Lamey, and Everett Sappenfield all served honorably in the military on active duty but were discharged due to physical disabilities incurred over the course of their service. Mr. Grooms filed his complaint against the United States Army ("Army") on November 4, 2011, seeking

active duty backpay under 37 U.S.C. § 204, or, alternatively, disability retirement pay and benefits under 10 U.S.C. §1201. *Grooms v. United States*, docket no. 11-743. On November 4, 2011, Mr. Lamey and Mr. Sappenfield filed a similar complaint against the United States Navy ("Navy"), seeking the same remedies. *Lamey et al. v. United States*, docket no. 11-741. Finding the facts and arguments made by all three plaintiffs very similar, Judge Victor Wolski, on March 1, 2012, granted an unopposed motion transferring *Lamey* to this court. On March 29, 2012, this court issued an order consolidating *Lamey* and *Grooms*.[1]

Although the facts differ slightly, the plaintiffs essentially advance the same claims in both cases. Thus, in Count I, both sets of plaintiffs challenge the 20 percent disability rating assigned to them by the Army and Navy Physical Evaluation Boards ("PEB"). Both sets of plaintiffs argue that the PEB's application of the "preponderance of the evidence" standard to evaluate their physical disabilities is contrary to law because that standard conflicts with the "benefit of the doubt rule" that is mandated by 38 U.S.C. § 5107. In Count II, both sets of plaintiffs contend that they were improperly discharged from military service due to procedural errors made by their respective PEBs, and are accordingly entitled to backpay under the Military Pay Act, 37 U.S.C. § 204. Nevertheless, despite this uniformity there is one claim proffered by plaintiff Grooms that treads new ground—an allegation that the PEB's failure to "properly adjudicate" his case violated his Fifth Amendment Due Process rights. (The court, however, finds it unclear what remedy he is seeking).

On May 14, 2012, the government filed a motion seeking dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), as well as judgment on the administrative record under RCFC Rule 52.1. On June 15, 2012, plaintiffs filed a response to the government's motion to dismiss seeking cross judgment on the administrative record. These motions now await disposition by the Court.

For the reasons stated below, defendant's motion to dismiss Mr. Grooms' due process claim for lack of subject matter jurisdiction is granted, defendant's motion to dismiss Count II for failure to state a claim is granted, and defendant's motion for judgment on the administrative record as to Count I is granted. Conversely, plaintiffs' motion for cross-judgment on the administrative record is denied, and Mr. Grooms' motion for partial summary judgment is denied.

---

[1] Mr. Grooms, Mr. Lamey, and Mr. Sappenfield each style their complaints as a "Class Action Complaint" and moved, on August 6, 2012, to certify their action as a class action suit with Mr. Grooms, Lamey, and Sappenfield as the named plaintiffs. However, on September 4, 2012, the Court granted the Defendant's unopposed Motion to stay the motion for class certification until the resolution of defendant's motion to dismiss and the parties' cross-motions for judgment on the administrative record.

# I.   FACTUAL BACKGROUND

## A.   The Military's Disability Evaluation System ("DES")

Plaintiffs David Lamey, Everett Sappenfield, and Richard Grooms, are former military service members who were found by their respective branches to be unfit for active duty as a result of disabling conditions.  At issue in this case is the amount of disability compensation or backpay to which they are entitled.

Disputes regarding the disability benefits of discharged military service members are governed by Chapter 61 of Title 10 (codified as 10 U.S.C. § 1201 *et seq.*), which provides the Secretary of each branch of the armed services the authority to determine whether service members are fit for duty and to retire those members who are not.  Service members who have served for at least twenty years or who have been assigned a disability rating of "at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veteran Affairs" are entitled to disability retirement pay under §§ 1201 and 1202, as long as they meet the requirements of § 1201(b)-(c) (e.g., the disability was not the result of intentional misconduct, etc.)  Such "medically retired" service members are entitled to receive monthly disability payments in perpetuity, as well as rights to medical care and commissary privileges.  In contrast, service members with less than 20 years of military service who are assigned a rating between 0 percent and 20 percent are "medically separated" and are only entitled to a one-time lump sum disability severance payment, which varies in size depending on the amount of time in service.  10 U.S.C. §§ 1203, 1212.

The Department of Defense has implemented these statutory requirements through U.S. Dep't of Def. ("DoDI"), *Instructions 1332.18* and *1332.38*, which establish the Disability Evaluation System ("DES") and define the applicable standards for conducting physical disability evaluations.  The Army and Navy, in turn, have issued their own regulations detailing the procedures used to evaluate and adjudicate disability cases.  *See* Dep't of the Army, *Army Reg. 635-40* and Dep't of the Navy, *Sec'y of the Navy Instr.* ("SECNAVINST"*) 1850.43*.

The DES is structured in four stages.  In the first stage, a Medical Evaluation Board ("MEB") is convened when the fitness for duty of a service member is raised.  The MEB panel, which is composed of physicians, documents the physical conditions of the service member and determines whether the member is fit for retention.  If the MEB finds the member unfit for duty, the PEB rates the soldier's disability using a modified version of the VA Schedule for Ratings Disabilities, and refers the member to a Physical Evaluation Board ("PEB") for adjudication. *See* 10 U.S.C. § 1201; *Army Reg. 40-400*, chapter 7; *SECNAVINST 1850.4e*, ¶¶ 1004-05, 3101-07.

In the second stage, the PEB examines evidence compiled by the MEB—obtaining additional documentation if necessary—and evaluates whether the soldier is physically capable of meeting his duties.  This examination is initially performed by an informal PEB.  *Army Reg.*

*635-40,* ¶ 4-17(a)(4); *SECNAVINST 1850.4E,* ¶¶ 3301-08. If the informal PEB finds that the soldier is unfit for duty (i.e., "unfit to perform the duties of the member's office, grade, rank, or rating because of a physical disability. . .") but cannot be retired because the disability is not yet "determined to be of a permanent nature and stable," the PEB must place the soldier on the Temporary Disability Retired List ("TDRL"). 10 U.S.C. §§ 1201-02. *See also Army Reg. 635-40,* ¶ 7-2(a); *SECNAVINST 18504E,* ¶ 3601. The PEB must reevaluate the soldier's physical condition at least once every 18 months. *Army Reg. 635-40,* ¶ 7-4; *SECNAVINST 1850.4E,* ¶ 3606. Once a soldier has been given a disability rating and placed on the TDRL, the soldier's rating cannot be changed by the PEB until the soldier has been removed from the TDRL. *Army Reg. 635-40,* ¶ 7-20; *SECNAVINST 1850.4E,* ¶ 3622. A soldier with less than twenty years of service cannot be placed or kept on the TDRL unless his disability rating is at least 30 percent. *Army Reg. 635-40,* ¶ 7-20(c); *SECNAVINST 1850.4E,* ¶ 3627. When a soldier is removed from the TDRL, the informal PEB must determine whether the soldier is fit for duty. If the soldier is unfit, the informal PEB assigns the soldier a disability rating between 0 and 100 percent according to the VA rating schedule. *Army Reg. 635-40,* ¶¶ 4-17, 4-19(i); *SECNAVINST 1850.4E,* ¶¶ 3301-08. If the service member disagrees with the fitness finding or disability rating, the informal PEB refers the case for further consideration by a formal PEB, which more closely resembles a traditional court case, complete with a right to counsel, witness testimony, and opportunity to present new evidence. *Army Reg. 635-40,* ¶¶ 4-21(a)-(b); *SECNAVINST 18504E,* ¶¶ 4201-4217, 4301-4342. Consideration of a case by a formal PEB satisfies the soldier's legal right to a "full and fair hearing" set out in 10 U.S.C. § 1214. *See* DoDI, *Instr. 1332.38,* ¶ E3.P1.3.3

In the third stage, both the Army and Navy provide additional opportunities for appellate review of the formal PEB's decision. An Army service member may submit a rebuttal of the formal PEB's findings to the Army Physical Disability Agency (USAPDA). *Army Reg. 635-40,* ¶ 4-22(b)(3). If the USAPDA disagrees with the formal PEB's conclusions and the soldier submits a further rebuttal, the case is forwarded to the Army Physical Disability Appeal Board for final decision. Navy service members may seek review of formal PEB decisions by submitting a petition for relief to the Director of the Naval Council of Review Boards. After a naval service member has been discharged or separated, the member may also petition the Board for Correction of Naval Records. *SECNAVINST 1850.4e,* ¶¶ 3102, 5001-05.

In the fourth and final stage—after the DES is complete, and the service member has been discharged—the former service member may seek review of disability ratings of 20 percent or lower by the Physical Disability Board of Review ("PDBR"). 10 U.S.C. § 1554; U.S. Dep't of Def., *Instr. 6040.44, Lead DoD Component for the Physical Disability Board of Review PDBR)* ¶ 4(a)(June 27, 2008).

In the case before the court, all three plaintiffs were assigned a temporary rating of 40 percent by their respective MEBs and a final disability rating of 20 percent by their formal PEBs, entitling them to disability severance pay but not to medical retirement. Plaintiffs contend that

they are entitled to receive a higher disability rating and would have received a higher rating but for (1) inadequate documentation by the Army and Navy at the MEB stage, and (2) the invocation of the wrong standard of proof in the evaluation of their disabilities at the PEB stage.

**B.     Plaintiff David Lamey**

Mr. Lamey enlisted in the Navy and entered active service on May 20, 1992.  Lamey Admin. R. 533 ("LAR").[2]  While on active duty, Mr. Lamey was diagnosed with diabetes and referred to a MEB.  *Id*. at 60-63, 276.  On October 21, 2004, the Navy placed him on the Temporary Disabled Retired List ("TDRL") on account of this condition and assigned him a temporary disability rating of 40 percent.  *Id*. at 42, 46.

On August 16, 2006, the Navy reevaluated Mr. Lamey.  The examining physician found that Mr. Lamey's diabetes had stabilized and observed that Mr. Lamey "lives a fairly active lifestyle with surfing being his preferred sport."  The physician noted that although Mr. Lamey is "fully functional as a meteorologist," he "would be non-deployable in most active duty situations."  *Id.* at 48-50.  The physician also noted that Mr. Lamey needed continued access to insulin and glucose monitoring supplies.  *Id.* at 50.

On January 10, 2007, the Navy decided to retain Mr. Lamey on the TDRL with a temporary rating of 40 percent for diabetes.  *Id.* at 44-46.  In June 2007, the Department of Veteran Affairs ("VA") examined Mr. Lamey and rated his diabetes at 40 percent because he required insulin, a restricted diet, and regulation of his activities.  *Id.* at 34-36.  On December 28, 2009, Mr. Lamey had his final TDRL examination.  The examining physician observed that Mr. Lamey now required "an intensive insulin regimen to control his diabetes" and "can only jog or swim for short durations and is no longer able to surf or play basketball games."  *Id.* at 41.  The physician reported that Mr. Lamey experienced hypoglycemia eight to nine times a week, still needed daily insulin injections, and was on a restricted diet.  *Id.* at 41.  The physician noted that Mr. Lamey's diabetes was "difficult to control" despite frequent monitoring, and that he had to "limit his exercises due to frequent hypoglycemia."  *Id.* at 42.

On January 6, 2010, an informal PEB found Mr. Lamey unfit for service due to his diabetes, assigned him a disability rating of 20 percent, and recommended that he be separated with severance pay.  *Id.* at 39.  On January 8, 2010, Mr. Lamey submitted a request for reconsideration and requested a formal PEB in the event that the informal PEB refused to alter his rating.  *Id.* at 30.

---

[2] Although this court is considering *Grooms* and *Lamey* as a consolidated case, each plaintiff retains his own administrative record.

The Navy convened a formal PEB on April 27, 2010.  *Id.* at 18, 23-29.  At the hearing, Mr. Lamey requested a rating of 40 percent and submitted a letter from his endocrinologist, which explained, in total: "Due to your high risk for and history of exercise and nonexercise related hypoglycemia, it is advised that you avoid all strenuous occupational and recreational activities."  *Id.* at 18; Compl. Ex. 1.  Mr. Lamey submitted no other evidence to the formal PEB. LAR 18.

On July 6, 2010, the formal PEB recommended that Mr. Lamey be found unfit due to his diabetes and recommended a 20 percent disability rating.  *Id.* at 18-19.  The formal PEB declined Mr. Lamey's request for a 40 percent rating "due to a lack of supporting documentation."  *Id.* at 18-19.

After the conclusion of the formal PEB proceedings, Mr. Lamey submitted a petition for relief to the Director of the Naval Council of Review Boards, arguing that the PEB had failed to properly weigh all the evidence and that the formal PEB had erred in not applying the "benefit of the doubt" rule in his favor.  *Id.* at 8-13.  On August 24, 2010, the Director denied Mr. Lamey's request for a 40 percent rating, finding that the formal PEB's decision was supported by a preponderance of the evidence because the record did not establish that it was medically necessary to avoid "strenuous occupational and recreational activities."  *Id*. at 3-5.  Following this denial, Mr. Lamey—together with Mr. Sappenfield—filed suit in the Court of Federal Claims on November 4, 2011.

## C.    Plaintiff Everett Sappenfield

Mr. Sappenfield enlisted in the Navy on October 27, 1997.  Sappenfield Admin. R. 443 ("SAR").  He was diagnosed with diabetes on August 31, 2002, while on active duty.  *Id.* at 215. A Navy MEB panel confirmed the diagnosis on November 1, 2002.  *Id.* at 191-197.  On January 13, 2003, the Navy placed him on the Temporary Disabled Retirement List ("TDRL") with a disability rating of 40 percent.  In June 2004, and again in May 2006, the Navy re-evaluated Mr. Sappenfield, but determined that his diabetes had not yet stabilized at a permanent rate of disability and opted to retain him on the TDRL.  *Id.* at 161, 176-180.

On August 7, 2007, Mr. Sappenfield had his final TDRL examination.  *Id.* at 161-165. The examining physician reported that Mr. Sappenfield's diabetes condition was unlikely to improve, and recommended that he be placed on the Permanent Disabled Retired List and that he appear before a PEB.  *Id.* at 164.

On September 5, 2007, an informal PEB found Mr. Sappenfield unfit for service, assigned him a 20 percent disability rating for his diabetes, and recommended that he be separated with severance pay.  *Id.* at 155.  On September 23, 2007, Mr. Sappenfield submitted a request for reconsideration, as well as a formal PEB should the PEB decide not to change his rating from 20 to 40 percent.  *Id.* at 45.

The Navy convened a formal PEB on December 6, 2007. *Id.* at 15. Mr. Sappenfield appeared and requested to be rated at 40 percent due to his need to regulate his physical activity and to his episodes of hypoglycemia. *Id.* at 17-18. He submitted eleven pages of medical evidence to the formal PEB, consisting of his most recent diabetic evaluation and statements from his doctor and a diabetes manager, as well as nonmedical records indicating that he had missed work due to his condition. *Id.* at 32-35.

The formal PEB issued its findings on January 11, 2008, and recommended a 20 percent disability rating. *Id.* at 15-19. The formal PEB considered the additional evidence provided by Mr. Sappenfield, but found, based on testimony from Mr. Sappenfield, that he "seemed extremely cautious to avoid any hint of any hypoglycemic episode, holding himself back from much rigor in any type of activity, seemingly much less than many diabetics facing his same circumstances . . . ." *Id.* at 19. The formal PEB concluded that the evidence "meets the 20% standard entirely." *Id.*

On February 17, 2008, Mr. Sappenfield submitted a petition for relief to the Director of the Naval Council of Review Boards, arguing that the formal PEB's rating was against the "great weight of the evidence on the record." *Id.* at 4. He also submitted additional evidence regarding hypertension and a work-duty restriction submitted by his doctor that instructed him not to lift anything heavier than 25 pounds. *Id.* at 5-6. Unlike Mr. Lamey, Mr. Sappenfield did not raise any issue regarding the "preponderance of the evidence" standard used by the PEB or the MEB's transmission of evidence supporting his claim. *Id.* at 4-7.

On February 28, 2008, the Director denied Mr. Sappenfield's request for a 40 percent rating, reasoning that Mr. Sappenfield is "able to participate in all normal living activities provided that [his] insulin levels, exercise, and diet are well controlled and appropriately adjusted." *Id.* at 2-3. Following this denial, Mr. Sappenfield—together with Mr. Lamey—filed suit in the Court of Federal Claims on November 4, 2011.

## D.    Plaintiff Richard Grooms

Mr. Grooms first enlisted in the United States Marine Corps in 1993, and then enlisted in the Army on May 19, 2004. Grooms Admin. R. 276 ("GAR"). During his first year of active duty service in the Army, Mr. Grooms was diagnosed with migraine headaches, and approximately one year later, was diagnosed with sleep apnea. *Id.* at 162, 164. In April 2006, an Army MEB confirmed the migraine and sleep apnea diagnoses and referred him to a PEB. *Id.* at 162. Mr. Grooms concurred with the MEB's determination that his migraine condition did not preclude him from serving, and requested to be retained on active duty. *Id.* at 163. On May 31, 2006, the informal PEB found Mr. Grooms fit for duty due to the absence of "any functional impairment which prevents satisfactory performance of duty." *Id.* at 159. Mr. Grooms did not request a formal PEB. *Id.* at 160.

Mr. Grooms was deployed in Afghanistan between January 2007 and January 2008. During this tour, Mr. Grooms suffered a back injury when he was "forcibly thrown from the top bunk of his sleeping quarters due to the proximal impact of an enemy RPG." *Id.* at 63. When the resulting compression fracture in his back did not heal properly, Mr. Grooms was sent to the Army MEB for evaluation. *Id.* at 64. The doctor, who examined Mr. Grooms on January 26, 2010, found it "highly unlikely" that Mr. Grooms would be able to "meet retention criteria" and recommended that he be referred to a PEB for adjudication. *Id.* at 67. The examining physician also took note of Mr. Groom's migraine headaches and sleep apnea conditions. Although he found Mr. Groom's sleep apnea technically disqualifying, he observed that Mr. Grooms had been found fit for duty by a prior MEB, and that his symptoms had not changed since that time. *Id.* at 66.

The informal PEB, which convened on March 22, 2010, found Mr. Grooms unfit for service due to his back injury, and recommended a disability rating of 10 percent. The informal PEB did not find that any of Mr. Grooms' other ailments, including sleep apnea and migraine headaches, rendered him unfit for duty. *Id.* at 154-56. Mr. Grooms sought review by a formal PEB, which convened on April 30, 2010. *Id.* at 156, 58. The formal PEB also found Mr. Grooms unfit for duty on account of to his back injury and recommended a disability rating of 20 percent. *Id.* at 57. However, the formal PEB also found that Mr. Groom's sleep apnea condition did not separately render him unfit for service and that his migraine headaches and other conditions did not interfere with his functional activities. It concluded that Mr. Grooms should be separated with severance pay. *Id.*

Mr. Grooms submitted a rebuttal letter on May 21, 2010, alleging that the formal PEB failed to include his functional loss of range of motion based on pain, to consider incapacitating episodes as a basis for rating his lower back injury, and to properly address his migraine condition. *Id.* at 23. The formal PEB responded on May 26, 2010, and restated its position that Mr. Grooms' back injury warranted a 20 percent rating. It reiterated that Mr. Grooms's migraine headaches met retention standards and that the formal PEB had "fully considered all of [Mr. Grooms'] testimony and exhibits presented at the formal board." *Id.* at 8-9. The formal PEB also confirmed that it had applied a preponderance of the evidence standard. *Id.* at 9.

On June 3, 2010, the Army Physical Disability Agency affirmed that the formal PEB's findings were supported by substantial evidence and did not adjust Mr. Grooms' disability rating. *Id.* at 5. On November 4, 2011, Mr. Grooms filed suit in this court.

## II.    APPLICABLE LEGAL STANDARDS

Below are the applicable standards that the court must apply in adjudicating the motions before the court.

Initially, any federal court must first determine its jurisdiction to hear a case before it advances to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citing

*Ex parte McCardle*, 7 Wall. 506, 514 (1868)). For the Court of Federal Claims, it is primarily the Tucker Act that confers upon it jurisdiction to adjudicate money claims against the United States. Specifically, this court has jurisdiction over claims against the United States founded on a money-mandating source of law and not sounding in tort. 28 U.S.C. § 1491(a)(1). Nevertheless, the Tucker Act is itself only a jurisdictional statute; it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). In order to fall within the scope of the Tucker Act, therefore, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). The Court of Appeals for the Federal Circuit has held that both 10 U.S.C. § 1201 and the Military Pay Act are money-mandating statutes. *See* Jam*es v. Caldera*, 159 F.3d 573, 581 (Fed. Cir. 1998) (holding that the Military Pay Act, 37 U.S.C. § 204, is a money-mandating statute); *Sawyer v. United States*, 930 F.2d 1577, 1580-81 (Fed. Cir. 1991) (holding that 10 U.S.C. § 1201 is money-mandating despite the word "may"). Moreover, although this court "does not have general equity jurisdiction, the Tucker Act provides that in cases based on actions for monetary relief, the court may issue such orders as are necessary '[t]o provide an entire remedy and to complete the relief afforded by the judgment,' including . . . 'placement in appropriate duty or retirement status.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (citing 28 U.S.C. § 1491(a)(2)).

As to the motions to dismiss under RCFC Rule 12(b)(6), such motions test the legal sufficiency of a complaint in light of RCFC Rule 8(a), which requires "a plausible 'short and plain' statement of the plaintiff's claim, showing that the plaintiff is entitled to relief." *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013) (quoting *Skinner v. Switzer*, 131 S. Ct. 1289, 1291 (2011)). Although a complaint "does not need detailed factual allegations," the plaintiff must plead enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss for failure to state a claim, the court must accept plaintiff's factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Nonetheless, the court should dismiss a complaint "when the facts asserted by [the] claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

When considering RCFC Rule 52.1 cross-motions for judgment on the administrative record, the court must determine "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc*. v. *United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). In contrast to RCFC Rule 56, the existence of genuine issues of material fact will neither preclude a judgment on the administrative record nor require evidentiary proceedings. *Johnson v. United States*, 97 Fed. Cl. 267, 270 (2011). The court can even consider disputed facts, for the resolutions of these cross-motions is "akin to an expedited trial on

the paper record." *L-3 Global Commc'ns Solutions, Inc. v. United States*, 82 Fed. Cl. 604, 608 (2008).

And, in reviewing the decision of a military board in the context of a disability retirement benefits dispute, this court should not make independent factual assessments of medical evaluations or determine whether the PEB came to the "correct" conclusion. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Rather, the court's role, as in other record cases, is limited to determining whether the agency's final action was "arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law." *Fisher v. United States*, 402 F.3d 1167, 1180 (Fed. Cir. 2005); *see also Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). This standard is the same as the standard of review defined by the Administrative Procedure Act, 5 U.S.C. § 706. "[I]t has become well established that judicial review of decisions of military corrections board is conducted under the APA," despite the fact that the APA standard is explicitly cited only in the bid protest portion of the Tucker Act. *Walls*, 582 F.3d at 1367 (referring to 28 U.S.C. § 1491(b)(4)).

Accordingly, this court is not a "super correction board" responsible for determining which service members are fit to serve, *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983), but must defer to administrative decisions regarding a service member's fitness for service, *Fisher*, 402 F.3d at 1176-77. The applicable standard "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938).

## III.  DISCUSSION

Both complaints under consideration advance nearly identical legal arguments. Specifically, in Count I, plaintiffs argue that they have been denied the retirement pay and benefits that they are entitled to under 10 U.S.C. § 1201 *et seq.* because the Army and Navy PEBs applied the wrong legal standard. In Count II, plaintiffs argue that they are entitled to backpay under the Military Pay Act, 37 U.S.C. § 204, "by virtue of the [Army and Navy's] failure to properly adjudicate their cases in accordance with 10 U.S.C. § 201 *et seq.*" Lamey *et al.* Compl. ¶ 66; Grooms Compl. ¶ 67. Finally, plaintiff Grooms also suggests, in the "Factual Allegations" section of his complaint, that "the failure to properly adjudicate [his] case violated" his Fifth Amendment Due Process rights. Grooms Compl. ¶¶ 51-52.

On May 14, 2012, the United States filed a Motion to Dismiss and for Judgment on the Administrative Record ("Mot. Dismis & Mot. J. Admin. R."). First, defendant argues that this Court has no subject matter jurisdiction over Mr. Grooms's Fifth Amendment Due Process claim because the Due Process Clause is not a money-mandating provision. Second, defendant moves to dismiss plaintiffs' claim that they are entitled to backpay under the Military Pay Act (Count II)

for failure to state a claim upon which relief may be granted.  Defendant contends that plaintiffs were no longer on active duty when the alleged procedural violations took place and were not constructively on duty because they had been found unfit to serve.  Finally, defendant requests judgment on the administrative record in regard to Count I.  Defendant argues that the Army and Navy PEBs applied the correct standard and that they are entitled to judgment on the administrative record because their determinations are supported by substantial evidence.

On June 15, 2012, plaintiffs filed a reply to defendants' Motion to Dismiss and for Judgment on the Administrative Record.  *See* Pls.' Opp'n & Cross Mot.  In their reply brief, plaintiffs also allege that they are entitled to partial summary judgment on certain issues because the government failed to address them in its Motion to Dismiss.  Pls.' Opp'n & Cross Mot. 15-24.

## A.  Defendant Is Entitled to Dismissal of Plaintiffs' Claim for Backpay Under the Military Pay Act.

In Count II of both complaints, plaintiffs allege that they were discharged without a "full and fair hearing," in violation of 10 U.S.C. § 1214, as a result of procedural violations by their respective MEBs and PEBs.  Plaintiffs argue that they are accordingly entitled to backpay under the Military Pay Act, 37 U.S.C. § 204.  Lamey *et al*. Compl. ¶ 66; Grooms Compl. ¶ 67.  Most importantly, plaintiffs claim they were prejudiced by the PEB's application of the "preponderance of the evidence" standard rather than the "benefit of the doubt rule."  Lamey Compl. ¶ 31; Grooms Compl. ¶ 48.  Mr. Grooms also claims that the MEB's failure to completely catalogue his limited range of motion deprived him of "his right to a full and fair hearing."  Grooms Compl. ¶¶ 46-40.  Defendant, as stated, moves to dismiss the plaintiffs' argument that they are entitled to backpay under the Military Pay Act for failure to state a claim.

Simply put, plaintiffs allegations do not state a claim under Rule 12(b)(6) because under the Military Pay Act plaintiffs are entitled to pay only for any period in which they were actually or constructively enlisted (see below).  The Military Pay Act, codified as 37 U.S.C. § 204, entitles qualified members of the military service to "basic pay of the pay grade to which [they are] assigned or distributed."  In order to qualify under the Act for basic pay, a person must be either (1) "a member of a uniform service who is in active duty," or (2) "a member of the National Guard who is not a Reserve of the Army or the Air Force, who is participating in full-time training, training duty with pay, or other full-time duty . . ."  37 U.S.C. § 204.  *See Palmer v. United States*, 168 F.3d 1310, 1313-14 (Fed. Cir. 1999) (observing that § 204 defines "two basic categories of pay entitlements for military service"); *Greene v. United States*, 65 Fed. Cl. 375, 380 (2005).

Clearly, plaintiffs do not fall under either of these two categories because they were neither on active duty nor participating in full-time training; the plaintiffs had all been placed on the disabled list and had been removed from active duty at the MEB stage of the disability evaluation proceedings.  LAR 42; SAR 161; GAR 162-64.  Plaintiffs' backpay claim is

confusingly stated, but the gist of plaintiffs' argument is that they are entitled to backpay under the constructive service doctrine, which treats "members of the military who have been improperly discharged . . . as having continued to serve until they are properly discharged." *Christian v. United States*, 337 F.3d 1338, 1341-42 (Fed. Cir. 2003). However, as defendant points out, the litany of alleged procedural deficiencies raised by plaintiffs do not support a claim under the Military Pay Act because the constructive service doctrine applies only if plaintiffs were "ready, willing, and able" to resume their military duties. *Piccone v. United States*, 407 F.2d 866, 876 (Ct. Cl. 1969) ("plaintiff must ultimately sustain the burden of proving, as part of his claim, that he was ready, willing and able to perform at all times [since the date of the unlawful discharge]"); *Wright v. United States*, 81 Fed. Cl. 369, 372 (2008).

In the case before the court, all three plaintiffs were found unfit for service, and none of the named[3] plaintiffs dispute this finding. On the contrary, all three plaintiffs had requested to be found unfit. Grooms Compl. ¶ 26; Lamey et al. Compl. ¶ 28. In fact, the gravamen of both complaints is not that they were found unfit, but that the disability rating assigned to them was too low. Finally, the constructive service doctrine only applies if a plaintiff's separation from the military was involuntary, which is not the case here. *See Metz v. United States*, 466 F.3d 991, 998 (holding that a plaintiff no longer on active duty "must assert and ultimately establish that his separation was involuntary in order to fit within the scope of . . . § 204, or else his claim falls for failure to state a claim upon which relief can be granted"). Since the facts alleged by plaintiff do not amount to colorable a legal claim under the Military Pay Act, the court grants defendants' motion to dismiss Count II in its entirety.

## B. Defendant Is Entitled to Judgment on the Administrative Record with Respect to Plaintiffs' 10 U.S.C. § 1201 Claim.

Plaintiffs argue that they have been denied the retirement pay and benefits that they are entitled to under 10 U.S.C. § 1201 because the Army and Navy PEBs applied the "preponderance of the evidence" standard, which plaintiffs claim is incompatible with the benefit of the doubt rule mandated by 38 U.S.C. § 5107. Plaintiffs allege that had the PEB applied the benefit of the doubt rule, they would have been assigned a rating of 40 percent rather than 20 percent. Additionally, Mr. Lamey and Mr. Sappenfield argue that the Navy erred in requiring them to provide specific evidence of how their diabetic condition forced them to regulate their activity.

Defendant moves for judgment on the administrative record, arguing that the Army and Navy PEBs applied the correct standard, and that the disability ratings assigned to the plaintiffs

---

[3] All three plaintiffs sought to be found unfit. However, both complaints suggest that some of the proposed class members accepted the findings of the PEB without assistance of counsel. "Any such acceptance voided any waiver of later review due to the failure of counsel to adequately advise . . ." Lamey et al. Compl. ¶ 30. *See also* Grooms Compl. ¶ 29, which contains similar language.

are supported by substantial evidence.   In its response to Defendant's Motion to Dismiss, plaintiffs moved for cross-judgment on the administrative record.   These motions are now before the court.

1.   **The "Preponderance of the Evidence" Standard Applied by the Army and Navy PEBs Is Consistent with the "Benefit of the Doubt" Rule.**

The "benefit of the doubt" rule is imposed by 38 U.S.C. § 5107, which reads, in part, as follows:

> When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

Under 38 C.F.R. § 4.3, the benefit of the doubt rule applies when "a reasonable doubt arises regarding the degree of disability."   "Reasonable doubt," in turn, exists when there is "an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim." 38 C.F.R. § 3.102.

As plaintiffs point out, the Army PEB applies the "preponderance of the evidence" standard, as required by Army and Navy regulations.

> The voting members of a PEB make findings and recommendations in each case on the basis of the instructions set forth [below]. . . . *All findings must be based on a preponderance of the evidence.*   Recommendations must be supported by the findings."

*Army Reg. 635-40*, ¶ 4-19(a) (emphasis added).   The Navy PEB's also applies the same standard. *See SECNAVINST 1850.4e,* ¶ 1004(b) (requiring that the PEB make findings "based on a preponderance of the evidence of the record").

Plaintiffs argue that "there is a facial conflict between a standard that says rating determinations are made by a preponderance of the evidence (i.e., that the evidence must show that it is more likely than not that a fact is shown) and a standard of 'resolution of reasonable doubt' that says that the 'preponderance of the evidence must be against the claim for benefits to be denied.'"   Plaintiffs' Opp. to Def's Mot. 11 (citing *Gilbert v. Derwinski*, 1 Vet. App. 49, 54 (Vet. App. 1990)).

However, plaintiffs' legal interpretation creates a false conflict between the preponderance of the evidence standard and the benefit of the doubt rule, which only applies when there is an "approximate balance of positive and negative evidence."   According to the Court of Appeals for the Federal Circuit, an "approximate balance" exists only when the evidence on each side is "almost exact[ly or] nearly equal" or "too close to call."   *Ortiz v. Principi*, 274 F.3d 1361, 1364 (Fed. Cir. 2007) (internal quotations omitted).   *See also Gilbert v. Derwinski*, 1 Vet. App. at 55-56 (holding that the benefit of the doubt rule applies when "the

- 13 -

evidence is in relative equipoise"). Thus, Federal Circuit precedent dictates that the PEB should simply apply the preponderance of the evidence standard, with the benefit of the doubt rule coming into play only in close cases. *See Ortiz*, 274 F.3d at 1365 (stating that the benefit of the doubt rule applies only when the preponderance of the evidence does not favor either side); *see also Peterson v. United States*, 104 Fed. Cl. 196, 208-09 (2012) ("Because of the lack of 'an approximate balance of positive and negative evidence which d[id] not satisfactorily prove or disprove' plaintiff's claim . . . the 'benefit of the doubt' doctrine is not applicable in this case") (citing *Gilbert*, 1 Vet. App. at 55-56).

Finally, it is a canon of statutory construction that statutes and regulations should be read harmoniously, if such an interpretation is possible. *See Rice v. Martin Marietta Corp.*, 13 F.3d 1563, 1568 (Fed. Cir. 1993) (quoting *General Elec. Co. v. United States*, 929 F.2d 679, 681 (Fed. Cir. 1991)). This canon weighs in favor of the defendant's interpretation because it is perfectly possible to apply a qualified version of the preponderance of evidence standard, with the benefit of the doubt doctrine coming into play when there is a very "close call." Under the latter the tie goes to the runner.

## 2. The Navy PEB's Requirement of Specific Evidence of "Regulation of Activities" Is Not Contrary to Law.

Plaintiffs Lamey and Sappenfield both note that the VASRD diagnostic code for diabetes states that a soldier is entitled to a 40 percent disability rating if the soldier's condition "require[es] insulin, restricted diet, and regulation of activities." 38 C.F.R. § 4.119 (diagnostic code 7913). Both plaintiffs argue that the PEB erred in requiring specific examples of "regulation of activity" because "[t]he plain language of the VASRD require[s] no specificity." Lamey Compl. ¶ 40. Messers. Lamey and Sappenfield similarly argue that the VASRD regulations do not specifically require letters by physicians to state how long they have been seeing a patient. Lamey Compl. ¶ 40. They also argue that the PEB erred in considering the impact of diabetes on a soldier's ability to undertake gainful employment because the VASRD criterion for 40 percent does not contain any specific reference to gainful employment. Lamey Compl. ¶ 48.[4] As plaintiffs observe, defendant never addressed these statutory objections. Pls.' Opp'n & Cross Mot. 15-24; *c.f.* Def. Opp'n & Reply 17-19.

The court finds plaintiffs' arguments meritless. Simply put, the mere fact that 38 C.F.R. § 4.119 does not explicitly require soldiers to provide specific examples of "regulation of activity" does not preclude the PEB from making such a requirement. In fact, 38 C.F.R. § 4.1 requires "accurate and fully descriptive medical examinations . . . with emphasis upon the limitation of activity imposed by the disabling condition." *See Comancho v. Nicholson*, 21 Vet.

---

[4] Plaintiffs claim that the Government never addressed and hence conceded, under RCFR Rule 8(b)(6), that the PEB's interpretations violate the VASRD regulations. Accordingly, plaintiffs argue that they are entitled to partial summary judgment on these issues. However, for reasons explained below in Part III.C.2, the summary judgment standards and RCFC Rule 8(b)(6) do not apply to administrative record cases.

App. 360, 364 (2007) (holding that "medical evidence is required to support this criterion of a 40% disability-rating [for] regulation of activities").  The court also rejects plaintiffs' argument regarding the physicians' letters.  It is not unreasonable for the PEB to require some foundation for evaluating the physician's letter, such as the length of the physician-patient relationship.  Finally, the court finds that the PEB's consideration of the impact of a physical disability on a soldier's ability to pursue gainful employment is consistent with the VASRD regulations.  According to 38 C.F.R. § 4.1 (subtitled "Essentials of evaluative rating"), "The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations."  Hence, the court holds that the legal interpretations that the plaintiffs challenge are reasonable and not contrary to law.

**3.  The Disability Ratings Assigned by the Army and Navy PEBs Are Supported by Substantial Evidence.**

In addition to arguing that the Government applied an erroneous standard, plaintiffs allege that the Government's determinations regarding the disability ratings are not supported by substantial evidence.  Grooms Compl. ¶¶ 1, 21; Lamey Compl. ¶¶ 20-24 (regarding Mr. Lamey); Lamey Compl. ¶¶ 28-31 (regarding Mr. Sappenfield).

i.     Plaintiff David Lamey's Disability Rating Is Supported by Substantial Evidence.

Plaintiff Lamey argues that the PEB erred in assigning him a 20 percent rating rather than a 40 percent rating, and that the PEB's decision to do so was not supported by substantial evidence.  Lamey Compl. ¶¶ 19, 35.  As discussed above, the Navy PEB applied the "preponderance of the evidence" standard and determined that the preponderance of the evidence did not favor Mr. Lamey's claim that he was entitled to a 40 percent disability rating.  The PEB did not find that the evidence was "in relative equipoise," and accordingly did not apply the benefit of the doubt rule in favor of Mr. Lamey's claim.

According to the VA schedule, a 40 percent disability rating for diabetes is only warranted if a member requires "insulin, restricted diet, and *regulation of activities*." 38 C.F.R. §4.119, Diagnostic Code 7913 (emphasis added).  Section 4.119 defines the "regulation of activities" as the "avoidance of strenuous occupational and recreational activities."  In contrast, if a member's condition does not require "regulation of activities" but merely requires "insulin and restricted diet, or oral hypoglycemic agent and restricted diet," a 20 percent disability rating is appropriate.  *Id.*

This court finds that the formal PEB's decision is in fact supported by substantial evidence.  Although Mr. Lamey emphasizes that he had previously been assigned a temporary rating of 40 percent, a soldier cannot be rated lower than 40 percent for diabetes and be retained on the Temporary Disability Retired List ("TDRL").  *See Army Reg. 635-40,* ¶ 7-20(c) and

*SECNAVINST 1850.4E*, ¶ 3627 (stating that a soldier cannot be placed on the TDRL unless he is assigned a temporary rating of at least 30 percent); *see also* 38 C.F.R. § 4.119 (Diagnostic code 7913) (the only available disability ratings for diabetes are 0, 10, 20, 40, 60, and 100 percent). Additionally, as discussed earlier, once a temporary disability rating is assigned, it cannot be changed. *Army Reg. 635-40*, ¶ 7-20 and *SECNAVINST 1850.4E*, ¶ 3622 (disability ratings cannot be adjusted; a change in rating may not be made until the soldier is taken off the TDRL and given a permanent disability rating). Temporary disability ratings are temporary for a reason—they are assigned when the service member's medical condition is not stable enough to warrant a permanent disability rating—thus assigning a permanent disability rating that is lower than the soldier's temporary disability rating is hardly unprecedented.

Moreover, the formal PEB observed that the plaintiff has the burden of establishing that it is "medically necessary" for him "to avoid strenuous recreational and occupational activities." LAR 19 (citing *Comancho v. Nicholson*, 21 Vet. App. 360, 364 (2007)). The formal PEB relied on the MEB's report, which indicated that Mr. Lamey could still engage in some, if limited, strenuous activity, including "jog[ging] or swim[ming] for short distances." *Id.* at 19, 28. The report did not indicate that Mr. Lamey's diabetes imposed any limitation on his occupational activities.

Finally, the formal PEB afforded Mr. Lamey the opportunity to present additional evidence to support his claim, but this plaintiff presented no new evidence other than a one sentence letter signed by his personal, civilian doctor stating, in total, that "[d]ue to your high risk for and history of exercise and nonexercise related hypoglycemia, it is advised that you avoid all strenuous occupational and recreational activities." *Id.* at 19. The letter did not include any specific indications about the nature of Mr. Lamey's restrictions and reported no particular strenuous occupational activities that he should avoid. *Id.* The formal PEB observed that the letter "did not say if the physician had ever seen the patient or anything specific about the restrictions." *Id.* Mr. Lamey was represented by counsel at the formal hearing and refused to answer any questions, including questions "about potentially strenuous occupational activities usually associated with [his occupation]." *Id.*

In conclusion, there is substantial evidence in the record supporting the formal PEB's determination that Mr. Lamey failed to establish that it was "medically necessary" for him "to avoid strenuous recreational and occupational activities."

    ii. Plaintiff Everett Sappenfield's Disability Rating Is Supported by Substantial Evidence.

Mr. Sappenfield also argues that the PEB erred in assigning him a 20 percent rating rather than a 40 percent rating, and that its decision to do so was not supported by substantial evidence. Again, the Navy PEB applied the "preponderance of the evidence standard" and did not apply the "benefit of the doubt" test because it did not find the evidence to be in equipoise. As in Mr. Lamey's case, the primary issue before the formal PEB was whether Mr. Sappenfield's diabetic

- 16 -

condition required him to regulate his activities, which is a prerequisite for a 40 percent disability rating.   38 C.F.R. §4.119, Diagnostic Code 7913; SAR 18.   The formal PEB found that the preponderance of the evidence supported a 20 percent rating.

As in the case of plaintiff Lamey, substantial evidence supports the formal PEB's determination that Mr. Sappenfield is only entitled to a 20 percent rating.   The formal PEB considered Mr. Sappenfield's testimony and came to the reasoned judgment that the limitations on Mr. Sappenfield's activities were due to an overabundance of caution on his part rather than medical necessity.   SAR 19.   The formal PEB also took into account "objective laboratory data," "the absence of serious diabetic complications," and "[Mr. Sappenfield's] continued gainful employment."   *Id*.   The Navy gave Mr. Sappenfield the opportunity to submit additional evidence of "avoidance of strenuous occupational and recreational activities" to support a 40 percent rating, but none was forthcoming.   *Id*. at 45, 17-18.

Although Mr. Sappenfield disagrees with the Navy's conclusion, it is not the role of the court to reweigh the PEB's decision.   The court is limited to determining whether the PEB's decision is supported by substantial evidence.   The court concludes that the record demonstrates that, at the very least, the PEB's decision was supported by substantial evidence.

   iii.  Plaintiff Richard Grooms' Disability Rating Is Supported by Substantial Evidence.

Mr. Grooms argues that the Army PEB erroneously failed to rate his migraine headaches and sleep apnea, and claims that the 20 percent rating the PEB assigned for his back disability is not supported by substantial evidence.   The record demonstrates otherwise.   In its narrative description, the formal PEB noted that the Army MEB had examined Mr. Grooms's migraine and sleep apnea conditions and found that they did not render Mr. Grooms unfit for service. GAR 56, 162-163.   Moreover, the formal PEB also took into account the fact that Mr. Grooms had concurred with the MEB's findings and had requested to be retained on active duty, and that neither condition had been listed on Mr. Grooms's physical profile as limiting his performance. *Id*. at 56, 162-163.   As the formal PEB observed, "the mere presence of a condition does not constitute a disability, nor does it result in an automatic unfit condition."   *Id*.   Thus the court finds that the Army's decision not to rate Mr. Grooms' migraine and sleep apnea conditions is supported by substantial evidence in the record.

The court also finds that the Army's determination that Mr. Grooms is entitled to a 20 percent rating for his back disability is supported by substantial evidence in the record.   Mr. Grooms alleges that the MEB findings were inadequate because they failed to account for additional loss of range of motion caused by pain or incapacitating episodes.   However, the formal PEB observed that "[t]he MEB recorded multiple measurements for each aspect of active motion," and that these measurements "reflect significant consistency and equate to a 20 percent rating," regardless of whether the forward flexion or combined range of motion criteria are used. *Id*. at 8.   The formal PEB found that even taking into account the additional loss of range of

motion during incapacitating episodes, the data still "corresponds to a 20 percent rating." *Id*. The court finds this conclusion reasonable and is not in a position to second guess it. Accordingly, the court holds that the PEB's decision is supported by substantial evidence and is not arbitrary or capricious.

## C. The Court Dismisses Mr. Grooms' Constitutional Claims and Denies Plaintiffs' Motion for Partial Summary Judgment.

### 1. Mr. Grooms' Constitutional Claims.

Defendant seeks to dismiss Mr. Grooms' Fifth Amendment Due Process claim on the ground that the Due Process Clause—unlike the Military Pay Act—is not a "money-mandating provision." *James v. Caldera*, 159 F.3d at 581. The Tucker Act does not provide this court with jurisdiction over Fifth Amendment Due Process claims unless the alleged violation constitutes an illegal exaction, *Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1363 (Fed. Cir. 2002), which occurs only if the Government has "improperly exacted or retained" money from the plaintiff, *Testan*, 424 U.S. at 401, 96 S.Ct. 948. Citing *Hamlet v. United States*, 873 F.2d 1414, 1416-17 (Fed. Cir. 1989), Mr. Grooms argues that the court has jurisdiction to hear his constitutional claims because they are not based solely on the Due Process Clause but "predicated on the additional denial of compensation or backpay, and those claims are money mandating." Pls.'Cross-Mot. 6.

Although the Federal Circuit has held that this court can hear constitutional claims based on non-money mandating constitutional provisions if they are made in conjunction with a money mandating source of law, *see Hamlet*, 873 F.2d at 1416-17, the court finds the nature of Mr. Grooms' alleged constitutional violation unclear. Mr. Grooms asserts, in paragraph 51 of the "Factual Allegations" section of his complaint, that the formal PEB "violated his procedural Due Process rights" by "improperly adjudicat[ing]" his case, but offers no explanation as to how his constitutional rights were violated. Mr. Grooms appears to assume that to the extent that the Army violated his statutory rights under the Backpay Act and 10 U.S.C. §§ 1201-06, it also necessarily violated his constitutional rights.

In any event, as Mr. Grooms concedes, the success or failure of his constitutional claim will depend on his § 204 backpay claim. *See Grooms Compl* at 6 ("These allegations, *if true*, are sufficient to be granted relief . . .") (emphasis added). The court has already found that the preponderance of the evidence standard applied by the PEB is not contrary to the benefit of the doubt rule set out in 38 U.S.C. § 5107. Moreover, as explained above, the alleged deficiencies on the part of the MEB and informal PEB did not deprive Mr. Grooms of a "full and fair hearing" under 10 U.S.C. § 1214 because the rights associated with a "full and fair hearing"— such as the right to counsel, right to testify, etc.—are provided to service members at the formal PEB stage. *See DoDI, Instr. 1332.38*, ¶ E3.P1.3.3; *Army Reg. 635-40*, ¶ 4-17a.3. The formal

PEB afforded Mr. Grooms the opportunity to rectify any omission by the MEB by submitting new evidence and by testifying on his behalf. *Army Reg. 635-40*, ¶ 4-21(a)-(b).

In light of the court's finding that the Army and Navy PEBs applied the correct legal standard and did not violate either the Military Pay Act, 10 U.S.C. § 1201 or 10 U.S.C. § 1214, and in light of Mr. Grooms' failure to articulate an actual constitutional claim, the court dismisses Mr. Grooms' constitutional claims.

### 2. The Court Denies Plaintiffs' Motion for Partial Summary Judgment.

The plaintiffs argue, in their reply brief, that they are entitled to partial summary judgment because "[t]he defendant's motion to dismiss and for judgment on the administrative record did not deny numerous (and the majority) of the plaintiff's allegations," as allegedly required by RCFC 8(b)(6). Pls.' Opp'n to Def.'s Mot. Dismiss & J. Admin. R. & Cross Mot. Partial Summ. J. 15 ("Pls.' Opp'n & Cross Mot."). Defendant dismisses Mr. Grooms' argument, stating that "[a]s this Court is aware, RCFC Rule 8 governs pleadings and responsive pleadings," and asserts that if the defendant "opts to file a 12(b) motion . . . its obligation to file a response is generally stayed upon resolution of the motion." Mot. Dismis & Mot. J. Admin. R. 18.

The arguments made by both parties reflect a misunderstanding of the nature of the case before the court. Summary judgment is available when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC Rule 56(a). However, to the extent that the entire "factual and procedural predicate" for the court's decision turns on agency action that is reflected in the agency record, it is not the role of the court to make an independent factual assessment or to determine which party is "correct" because those facts are already provided in the administrative record. RCFC Rule 52.1, Rules Committee Notes; *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009).[5]

Since all of the facts in this case are contained in the administrative record, neither RCFC Rule 56(a) nor RCFC 8(b)(6) is applicable. The only proper motion for Mr. Grooms to raise is a RCFC Rule 52.1 motion for judgment on the administrative record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (distinguishing a RCFC Rule 56(a) motion for summary judgment from a RCFC Rule 52.1 motion for judgment on the administrative record).

---

[5] The unique nature of an administrative record case is reflected in the changes made to the RCFC in 2006, when the Rules Committee replaced RCFC Rule 56.1 with RCFC Rule 52.1, removing language that had been borrowed from the summary judgment standard. *See Bannum*, 404 F.3d at 1355; RCFC Rule 52.1, Rules Committee Notes. The role of the court in an administrative record case is limited to considering the evidence before it and applying the proper standard, which in this case is the arbitrary and capricious APA standard. *A & D Fire Prot., Inc.* v. *United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

## IV.   CONCLUSION

For the reasons set forth above, defendant's motion to dismiss under RCFC Rule 12(b)(1) is GRANTED; defendant's motion for dismissal of Count II pursuant to RCFC Rule 12(b)(6) is GRANTED; defendant's cross-motion for judgment on the administrative record as to count II is GRANTED; plaintiffs' cross-motion for judgment upon the administrative record is DENIED; and plaintiffs' motion for partial summary judgment under RCFC Rule 56 is DENIED.   The Clerk is hereby directed to take the necessary steps to dismiss these matters.

**IT IS SO ORDERED.**

*s/ Lawrence J. Block*

Lawrence J. Block
Judge